No. 60.—GEORGE W. CRAWFORD, Governor, &c. for the use,
&c. plaintiff in error, *vs.* WILLIAM HOWARD and others, de-
fendants.

[1.] A Sheriff's bond, taken and approved by the Inferior Court, and averred
to be delivered to the Governor of the State, and signed and sealed and
attested by two of the Justices of the Inferior Court: *Held,* to be good at
Common Law, but bad as a statutory bond, because not given within thirty
days after the election of the Sheriff.

[2.] A Sheriff duly elected, but not having executed a bond, according to
law, within thirty days after his election, is an officer, *de facto,* and his acts
are valid, when they concern the public or third persons who have an in-
terest in them.

[3.] The Sheriff and his sureties held to be liable, on a voluntary bond, for
the acts of his deputies, although it contains no stipulation to that effect
upon Common Law principles: *Held,* that such a stipulation is not neces-
sary to the validity of a Sheriff's bond under our Statutes, and that if
otherwise good, as a statutory bond, it would be good without such stipula-
tion.

Debt, in Baker Superior Court.    Decision by Judge WARREN,
December Term, 1850.

This was an action against the sureties upon a Sheriff's bond,
alleged in the declaration to have been executed and delivered
to George R. Gilmer, then Governor of the State, conditioned,
that " if the said Sheriff should well and truly do and perform all
and singular the duties required of him in virtue of his said
office of Sheriff, as aforesaid, according to law and the trust
reposed in him, then the obligation to be void," &c.    The
breach assigned was the escape of a defendant in *ca. sa.* in the
custody of the deputy appointed by the Sheriff.    It appeared
from the declaration, that the Sheriff was elected on the 1st day
of January, 1838, and that the bond was given on the 6th day of
February, 1838.    It also appeared that the bond was attested
by only two of the Justices of the Inferior Court.

Upon the trial, and before the cause was submitted to the
Jury, the counsel for defendants demurred to the declaration,
and moved for a non-suit on various grounds, which motion and

demurrer were sustained by the Court on the following grounds :

1st. Because said office of Sheriff was forfeited, and said Sheriff ineligible, having let more than thirty days elapse before giving said bond, or taking the office of Sheriff.

2d. Because said bond was void as a statutory bond, and, though voluntary, was illegal and void, as at Common Law the two Justices of the Inferior had no authority to take it, and said Sheriff no power to do the acts required by the bond of him.

3d. Because the sureties could not be bound for the default of the deputy, as there was no clause in the bond to that effect, and it being admitted that it was not good as a statutory bond.

Each of these decisions was excepted to by defendants, and is assigned as error.

B. HILL and S. T. BAILEY, for plaintiff in error.

J. B. HINES, for defendants in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] We hold the bond in this case invalid as a statutory bond, because not taken in conformity with the law in this, that it was executed more than thirty days after the election of the Sheriff. 1 *Kelly*, 581. We do not hold that it is void under our Statutes, because it is not in terms a bond to hold the Sheriff liable for the acts of his deputy. The laws of this State make no such requirement. The Act of 1799 authorizes the Sheriff to appoint deputies, and declares that he shall be bound, in bond with security, for the faithful performance of his duty by himself and his deputies. This is an affirmance of the Common Law liability of the Sheriff. It does not mean that in the bond this liability shall be inserted, but simply declares that he shall give bond for the faithful performance of *his* duties, whether performed directly by himself or by his deputy. So, that if in other respects this bond were good under the Statute, we would not hold it bad, because there is in it no stipulation that the Sheriff shall be bound for the acts of his deputies. If the bond was good

under the Statute, he would be liable on it without such stipulation. I shall advert to this doctrine again. *Prince*, 430. 1 *Kelly*, 588.

[2.] The Court below held, that inasmuch as this bond was not given within the thirty days, the office of Sheriff was vacant—the Sheriff an usurper, and the bond at Common Law, as well as under the Statute, a nullity. Was the office vacant? The facts developed are few. The Sheriff was duly elected—gave bond, but not until thirty days after his election, and exercised the duties of the office for a length of time, perhaps an entire term. He was Sheriff of the County, *de facto*, and the obligations of the office, as to third persons and the public, attached. One is an officer, *de facto*, when he comes into office by color of election, and all his acts are good until removed. Ch. *Kent*, in *The People vs. Collins* said, "that law is too well settled to be discussed," and stopped the counsel. 7 *Johns. R.* 551. In the same case the Chancellor said, "It is a well-settled principle of law, that the acts of persons in office, *de facto*, are valid when they concern the public, or the rights of third persons who have an interest in the act done. The limitation of this rule is as to such acts as are arbitrary and voluntary, and do not affect the public utility." This rule is adopted to prevent the failure of justice. *Salk.* 43. *Ld. Raym.* 1244. 5 *T. R.* 56. *Cowp.* 413. 16 *Viner's Abr.* 114. *The King vs. Lisle, Andrews,* 263. 10 *Mass.* 290. 15 *Ibid,* 180. 9 *Johns.* 135. 12 *Ibid,* 296. 5 *Wend.* 231. 3 *B. & Ald.* 266. 5 *Eng. C. L. R.* 278.

The Statute declares, that if the bond is not given according to the requirement of law, the office shall be vacant; but until so declared, he is Sheriff, *de facto*. The judgment of the Statute is, that if he fails to qualify, he forfeits the right to the office under his election. But the proper officers of the law must pronounce the judgment of forfeiture; then he would be an usurper; his acts would, after that, be volunteer acts—nobody would be bound by them, and he would be liable only as any other citizen for whatever he might do contrary to law. The bond in this case, by the confession of the pleadings, being given after the time when the Statute requires it to be given, is void;

but the officer is still, *de facto*, Sheriff.   Upon a *quo warranto*, I do not doubt but that it would be. competent for him to show that the irregularity in giving the bond was without fault on his part.   The bond is good, as a voluntary bond, at Common Law. The declaration avers, 'that it was executed and delivered to George R. Gilmer, then being Governor of the State.   It is signed and sealed ; these are the requisites of a bond at Common law.   Considering it now in the light of a voluntary obligation, it is immaterial whether it is attested by two or more or no one of the Inferior Court ; it is a good bond without any attestation.   Nor in this light is it material to enquire whether it was approved by the majority of that Court or by a Judge of the Superior Court or not; if it were, the declaration avers that it was approved by the Inferior Court.   It is stated that it was *taken and approved* by the Inferior Court.   Upon this motion for a non-suit, which is but a demurrer to the action, all these statements are to be taken as true.   The averment that it was executed to George R. Gilmer, then being Governor of the State, is an averment that it was delivered to the appointees of the law —the Inferior Court.   So, also, it is in legal contemplation delivered to him, when it is, in fact, delivered to the Inferior Court, who are directed to take it.   It is quite sufficient to sustain this bond, so far as delivery is concerned, upon the averment that it was delivered to the obligee.   There is no legal objection to the Inferior Court taking such a bond.   1 *Kelly*, 583.   10 *Peters*, 359.   3 *Kelly*, 499.

· [3.] If the bond be good, by the rules of the Common Law, the sureties are bound to keep and make good the stipulations they have entered into.   In this contract they bind themselves to see to it, that their principal will well and truly do and perform all and singular the duties required of him, in virtue of his office of Sheriff, according to law and the trust reposed in him.   They have recognized him as Sheriff, in fact, whether legally qualified or not, and they agree that he shall well and truly do and perform the duties of that office.   The declaration charges, that he has not done and performed the duties of the office, but has permitted an escape, on final process, to the in-

jury of the plaintiff.    They are liable, if the facts be as charged. They cannot aver against their own voluntary undertaking.    It appears from the declaration that the process was handed to the Sheriff, and the arrest was made by his deputy.    It is argued, then, that upon Common Law principles, the sureties are not bound, inasmuch as they did not in the bond stipulate for the acts or omissions of deputies, but for the personal acts alone of the principal.    We think that, in agreeing to be bound for the principal, they are legally bound for all his acts or omissions, whether by himself directly or by his agents.    This is true, according to the law of principal and agent.    The principal is liable for all the acts and omissions of his general agent done or omitted within the scope of the agency.    The deputy is the general agent of the high Sheriff, to do and perform all acts which by law appertain to his office ; one of which is to keep a party arrested under legal process.    An escape will charge the principal, whether permitted by himself or his deputy.    " The master," says Judge *Story*, " is always liable to third persons for the misfeasances, negligences and omissions of his servant in all cases within the scope of his employment.    So the principal, in like manner, is liable to third persons for the like misfeasances, negligences and omissions of duty of his agent, leaving him to his remedy over against the agent, in all cases where the tort is of such a nature as that he is entitled to compensation."    *Story on Agency*, §308.    12 *Mod.* 489.    *Sayer's R.* 40, 41.

The rule in these cases is *respondeat superior*.    Lord *Holt*, in his opinion in *Lane vs. Cotton*, (12 *Mod.* 488,) says, " A servant or deputy, *quatenus*, such cannot be charged for neglect, but the principal only shall be charged for it.    But for a misfeasance, an action will lie against a servant or deputy, but not, *quatenus*, a deputy or servant, but as a wrong doer.    As, if a Bailiff, who has a warrant from the Sheriff to execute a writ, suffer his prisoner, by neglect, to escape, the Sheriff shall be charged for it and not the Bailiff," &c.    *Story on Agency*, §310.    *Cameron vs. Reynolds, Cowp.* 403.    *Paley on Agency*, 396, 397, *and notes.* 7 *T. R.* 35.    7 *Cowen,* 739.    1 *Wend.* 16.    1 *Bingham,* 150.    Our

Statute, which makes the deputy liable for his own acts, expressly reserves the liability of the principal.   *Cobb's Analysis*, 123.

If this be the rule of liability of the principal, there is no doubt but that sureties who stand for his liabilities are bound, without express stipulation, for the acts of his deputies or agents.   They trust to his fidelity and competency, and risk his discretion in the appointment of agents.   Third persons look to him for the faithful execution of his trust, and to the security which he has given.   The sureties make good his official omissions, negligences or misfeasances, as the law will charge him. It is immaterial whether he has a deputy or twenty or none ; they are bound for the faithful execution of his trust.   It is a familiar principle, that the liability of sureties is measured by that of the principal, unless they stipulate for a less liability.

Let the judgment be reversed.