STATE OF MISSISSIPPI, USE, ETC. *v.* H. A. COOPER ET AL.

1. STATE OFFICERS BY MILITARY APPOINTMENT. *Statutory rules not applicable.*
   A tax-collector, appointed by the military governor, did not come into office by virtue of the laws of the State, nor did his tenure depend upon any term fixed by statute. He entered and held at the pleasure of the appointing power. The principles that govern in the administration of the laws under the regular State magistracy do not apply to him or his sureties.

2. OFFICIAL BOND EXECUTED BY APPOINTEE OF THE MILITARY POWER.
   The presumption is that such a bond is a valid security for those interested.

3. OFFICIAL BOND. *Acceptance is presumptive waiver of defect in execution thereof.*
   Where a party in possession of an office makes and delivers a bond, conditioned according to law, the State will be presumed to waive any past delinquency as to the time or manner of giving the same, and such bond will be upheld as a valid security.

4. OFFICER. *Non-performance of statutory requirements is only cause of forfeiture.*
   A statutory declaration that an office shall be vacant unless certain statutory things are done does not of itself make a vacancy. It is merely cause of forfeiture, but the declaration of the consequence must be made.

5. OFFICIAL BOND. *Given before forfeiture declared is valid.*
   If before the forfeiture of an office is duly declared, bond be given by the officer and accepted, it will be upheld as a valid security, and the sureties thereon estopped from pleading the non-performance of the statutory requirements by their principal.

6. SAME. *Estoppel.*
   The sureties upon a bond executed by a *de facto* officer are estopped from denying its proper execution.

7. SUIT BY COUNTY. *Who may bring.*
   The board of supervisors is the proper usee in a suit on behalf of the county against a defaulting tax-collector.

8. SAME. *May be brought by other than district attorney.*
   Suit on behalf of the county against a defaulting tax-collector may be
   brought by counsel selected by the board of supervisors.

ERROR to the Circuit Court of Marshall County.

Hon. ORLANDO DAVIS, Judge.

*Falconer Brothers* and *Featherston, Harris & Watson*, for the plaintiffs in error.

The objection that suit should have been brought by the district attorney ought to have been made by plea in abatement. But it is not in any shape a valid objection. See § 1385, Code 1871. Art. 35, p. 420, Code 1857, is in the same words, except that in the Code 1871 are added the words : " *and in all matters in relation to the State or county taxes.*" See also § 1384, Code 1871 ; *Cocke* v. *Board of Police*, 38 Miss. 340. Code 1871, § 673, provides the only method for questioning an attorney's authority. An attorney needs no warrant ; he is presumed to have authority. *Hardin* v. *Ho-yo-po-nubby*, 27 Miss. 567 ; *Lester* v. *Watkins*, 41 Miss. 647.

If, by their second ground of demurrer, the defendants mean that the bond is not in statutory language, it is cured by statute. Code 1857, p. 136, art. 185. On its face the bond is an official bond. *United States* v. *Maurice*, 2 Brock. 96 ; 2 McCord, 107 ; 7 Rich. (S. C.) 226. But even if the bond be irregular, it may be sustained as a contract by a person not legally an officer to perform certain duties appertaining to an office. *United States* v. *Maurice, ubi supra ;* opinion of Justice Clayton, in *McNutt* v. *Lancaster*, 9 S. & M. 570 ; 9 S. & M. 183 ; 23 Miss. 548 ; 28 Miss. 671 ; 25 Miss. 417 ; *Rhodes* v. *McDonald*, 24 Miss. 418 ; *Stephens* v. *Crawford*, 3 Kelly, 508 ; 1 Kelly, 574 ; *Boykin* v. *State*, 50 Miss. 375 ; 23 Ala. 688 ; *United States* v. *Tingey*, 5 Pet. 115 ; *United States* v. *Bradley*, 10 Pet. 343 ; *Brown* v. *O'Connell*, 36 Conn. 432 ; *Byrne* v. *State*, 50 Miss. 688 ; *Taylor* v. *State*, 51 Miss. 79.

The third and fourth grounds of demurrer assume that it is necessary to declare that the bond was given in the statutory time, and that, unless so given, the bond is void.

The law does not require a party to aver what it presumes from a given state of facts. The declaration avers that Cooper was, at the date of the bond, the acting and duly qualified tax-

collector. This is the same as if all the facts necessary to make him such had been severally averred. *Kershaw* v. *Bank*, 7 How. 395; *Fizer* v. *Railroad Co.*, 32 Miss. 369; 27 Miss. 744.

Besides, by the reconstruction laws, terms of office, and the beginning and ending of the same, as defined in the laws of the State prior to said acts, were done away with, and were not the law of the case. Official terms began and ended at the discretion of the military commander. The laws of this State, as to the manner of Cooper's receiving the office, or the beginning of his term, or for the giving his bond, were in the control of a "higher law," and this court will take judicial cognizance of the fact. See Act March 2, 1867, 14 U. S. Sts. at Large, 428; Act March 23, 1867, 15 U. S. Sts. at Large, 2; Act July 19, 1867, 15 U. S. Sts. at Large, 14; *Cooper* v. *Moore*, 44 Miss. 386; *Scott* v. *Billgerry*, 40 Miss. 119–132; *Murrell* v. *Jones*, 40 Miss. 565; *Hill* v. *Boylan*, 40 Miss. 618; *Buchanan* v. *Smith*, 43 Miss. 90; *Mister* v. *McLean*, 43 Miss. 268; *Leachman* v. *Musgrove*, 45 Miss. 511; *The Venice*, 2 Wall. 258; *The Grapeshot*, 9 Wall. 129.

No cause of demurrer can be considered unless assigned. Code 1871, § 611.

*G. E. Harris*, Attorney-General, on the same side, cited the following authorities: *Byrne* v. *State*, 50 Miss. 688; *Taylor* v. *State*, 51 Miss. 79; *French* v. *State*, 52 Miss. 759.

*Manning & Watson* and *Lawrence Johnson*, for the defendants in error.

SIMRALL, C. J., delivered the opinion of the court.

This was a suit brought by the board of supervisors, as usees, against Cooper and his sureties, on his bond as tax-collector. The breaches are in substance a failure to collect the taxes after the assessment roll had been delivered to him for that purpose, and a failure to pay over into the county treasury taxes collected.

A demurrer was filed to the declaration, assigning several special causes, viz.: (1.) That the suit was not brought by

the district attorney.   (2.) That it does not appear that the bond is an official bond, as contemplated by the statutes. (3.) That the bond was not executed within the time required by law.   (4.) That the bond was actually executed and approved some months after it should have been, and is therefore void.

The declaration avers that the bond was executed on the 28th of May, 1869; that Cooper was tax-collector of Marshall County for the fiscal year commencing the 1st of May, 1868, and ending the 1st of May, 1869, and also for the year ensuing. At the date of the bond, he was acting and duly qualified as tax-collector, by appointment of General Gillem. It is not averred, however, when the appointment was made.

It is impossible to apply to the solution of the questions here involved the same rules applicable to this officer under the regular State government.   One provision of the act of Congress of the 2d of March, 1867, declares, " Any civil government which may exist [in the rebel States] shall be provisional only, and in all respects subject to the paramount authority of the United States, to abolish, modify, control, or supersede the same."   The Supplemental Act of July 19, 1867, empowered the military commandant to suspend or remove all officers, civil or military, and to fill vacancies occasioned by death, resignation, removal or otherwise ;   and the governments in said States, if continued, were to be continued in all respects subject to the military commanders of the respective districts, and the paramount authority of Congress.

The mode of inducting civil officers into their several offices had been superseded by the reconstruction acts : they were filled by the appointment of the military commandant.   The State government, if it continued to exist, was provisional merely, — subordinate to that established by these acts of Congress.   There was no power in the boards of supervisors to declare the office of sheriff vacant, if he did not take the statutory oath and give bond ; nor could they take any step to fill the office.   Whether Cooper came into office by reason of the death or resignation of his predecessor does not appear, nor is it material.   There was not at the date of his

appointment a sheriff in the State in office by virtue of an election.

The objection to the validity of the bond is that, not having been executed within the time prescribed by the statute, that is, within fifteen days after his appointment, it is not good under the statute, nor at common law, being without consideration. The State government had been practically abolished, and all civil power concentrated in the military commandant. None of the ministerial and executive offices could be filled by election, nor could any appointee of the military commandant be displaced by any thing that the board of supervisors could do. If bonds were dispensed with in any case, the laws of the State, and those appointed in the ordinary course of administration, were powerless to provide a remedy.

We do not suppose that Congress meant to dispense with official bonds where the statutes of the State required them, or to authorize the commanding general to do so, unless, in his judgment, it would be impracticable to give them. Be that as it may, it is plain that Cooper did not come into office as intended by the laws of the State, and that his tenure did not depend upon any term fixed by law, but that he entered and held at the pleasure of the appointing power. It would be inappropriate, therefore, to apply to him and his sureties the same principles that would govern in the administration of the laws under the regular State magistracy. It was the duty of Cooper to have given bond. It was the duty of the military commandant to have required it. Since action in the premises was at the pleasure of the military power, it is right to assume that the bond was executed, accordingly, as an indemnity for those interested.

Plainly, the appointment conferred the office. It was the duty of Cooper to give bond, and he should have done so before assuming to act. It was a continuous duty; and, although he remained in office some time before he did so, neither he nor his sureties should be heard to plead his neglect and default in exoneration of liability, especially where there was no power in the local magistracy — the board of police — to interfere and

act in such contingency, as provided by law. It is abundantly settled by authority that a person, quietly and without objection in possession of an office, performing its functions, by appointment or election, may do all official acts which pertain to the office, although he may have been ineligible, and may not have complied with the requisites of the law as to oath or bond.

If, whilst thus in possession, he makes and delivers a bond to the officer appointed to receive and approve it, conditioned according to law, shall the forbearance of the State, or those who wield political power, be construed as accepting the bond and waiving the delinquency ; or shall it be held that, inasmuch as the bond was not made in the time prescribed, or the principal was disqualified to hold office, the obligation is of no validity ? The execution of the security after the time has expired cures, so far as the officer is concerned, his past neglect. To allow the obligors to avoid it, although the principal remains in office, is to successfully plead his delinquency.

The sound doctrine, resting on the most cogent reasoning, is that announced in *United States* v. *Maurice*, 2 Brock. 96, by Marshall, C. J. ; viz., that it is incident to the sovereignty of the United States, or of a State, to contract, and it may become a contracting party to a bond, for the proper disbursement and return of public money in cases not previously prescribed or required by law. In *United States* v. *Tingey*, 5 Pet. 115, Story, J., repeated the same proposition, holding such a bond to be a binding contract between a principal and his sureties and the United States, although the bond may not be prescribed or required by any existing law. The same views are deliberately reaffirmed in *United States* v. *Bradley*, 10 Pet. 343. The court denominates them voluntary bonds ; and there is no objection to their validity in a " moral or a legal view." Nor was it at all material as to their force, whether given at the time of taking the office or afterwards. If such security may be taken by the State, when not directed by law, *a fortiori* ought they to be valid where the incumbent is required, before he does official acts, to make a bond, and fails, but afterwards does so, and continues in office.

The failure of the sheriff to make the bond within the time

limited in the Code of 1857 does not *ipso facto* vacate the office. It is cause of forfeiture; but the declaration of the consequence must be made, and the new election be ordered. If after the time has expired, and before the authorities have proceeded to act on the assumption of a vacancy, the bond is made and accepted, it would be unreasonable to hold that, although the government acquiesced in the continuance in office, yet no responsibility has been incurred. The just statement of the act is this: Both obligors and obligee treat on the assumption that the officer has not given the security. The tax-collector in effect says, I will now do what I ought long ago to have done; the obligee says, Give me the indemnity now, and you shall remain in office. If an officer who dispenses public funds may give bond when the law does not demand it, surely a bond is valid when the law prescribes it, and, if it cannot have effect as a statutory bond, is good as a common-law obligation. In *Stevens* v. *Treasurers*, 2 McCord, 107, the point under consideration was involved. There the statute required the bond to be approved and recorded within a certain time. If the sheriff failed to comply, his office should be vacated. It was held that neither he nor his sureties could set up the defence that the bond was made after the time had expired. They could not complain of the wrongful neglect, but were bound by their obligation. The end aimed at was to obtain security, nor could the obligors insist upon or take advantage of the error or neglect in the manner of giving or receiving it. Another case precisely analogous to the one last cited is *State* v. *Toomer*, 7 Richardson, 216, 226 *et seq.;* although the law said the office should be vacant and a new appointment made if bond was not perfected in a given time, yet a bond executed out of time was binding. It will be assumed that the party remained in office after the bond was given, with the acquiescence of the State. The statutory declaration that the office shall be vacant unless certain statutory things are done, does not of itself make a vacancy, for steps must be taken to fill the place, by election or appointment. A continuance in office gives the incumbent a *de facto* right. *Kottman* v. *Ayer*, 3 Strob. 92; *McBee* v.

*Hoke*, 2 Speers (S. C.), 144 ; *Sprowl* v. *Lawrence*, 33 Ala. 688 ; *Stephens* v. *Crawford*, 1 Kelly (Ga.), 574 ; s. c. 3 Kelly, 499, 508.

In *Thomas* v. *White*, 12 Mass. 367, after stating that the bond was not such as the probate judge, *virtute officii*, could take, and for that reason not a statutory bond, Parker, C. J., said : The bond " is undoubtedly good at common law ; *for the obligor has by his deed consented to* make the obligee trustee for the persons interested in the sum secured." See also *Stephens* v. *Crawford, ubi supra.* In the present case, the obligors contracted with the State, and agreed to be bound for those who under the law are interested in the penalty, as an indemnity for the faithful performance of certain duties.

The case of *Stephens* v. *Crawford*, already cited, successfully meets and disposes of the objections made by counsel as to the want of consideration, and on the point of delivery, without reproducing the reasoning, we refer to that case.

Putting the case of these obligors in its strongest aspect claimed by their counsel, these propositions are undoubtedly settled by authority. The appointment and taking possession of the office constituted Cooper *de facto* sheriff and tax-collector, and all things done by him *virtute officii* are valid. *Jones* v. *Scanland*, 6 Humph. 195 ; *People* v. *White*, 24 Wend. 520, 526. A bond executed by a *de facto* officer, conditioned for the faithful discharge of his duties, will be upheld as a valid security, nor can the sureties aver that he was not sheriff and tax-collector. They are bound by estoppel. Cases above cited ; *Stephens* v. *Crawford, ubi supra ; Iredell* v. *Barbee*, 9 Iredell, 250 ; *Green* v. *Wardwell*, 17 Ill. 278 ; *Byrne* v. *State*, 50 Miss. 688. Although the statute may declare that if the oath be not taken and bond executed within the time named, the office shall be vacant, yet, unless the authorities take steps to remove the party elected or appointed, if he has entered upon the office, the statute itself does not work that effect. Cases already cited.

Some of the authorities cited hold that the execution of the bond out of time converts the officer from a *de facto* into a

*de jure* incumbent, while others, as *Sprowl* v. *Lawrence*, *ubi supra*, and those cited from Georgia, hold that the bond loses its character of a statutory obligation, and is not subject to the special remedies, but that it is good at common law; and that constitutes the only difference.

Perhaps some of the cases in the reports of this State seem to be in conflict with these general principles. In *Tucker* v. *Hart*, 23 Miss. 548, the bond of Hart, superintendent of the penitentiary, was held to be not statutory, because it was payable to McNutt, governor, and his successors, whereas the statute required that it should be payable to the State. Not being statutory, it was said that it could not be sued upon in the name of Tucker, successor in office to McNutt. In *Mc-Nutt* v. *Lancaster*, 9 S. & M. 570, 593, the bond was void, in the opinion of the Chief Justice, because of the peculiar statute then in force; viz., " that the acts and proceedings done under color of office shall be absolutely void, and he [the tax-collector] shall be guilty of a misdemeanor, unless before he enters on his office he gives bond, &c., and takes and subscribes our oath." Lancaster had not taken and subscribed the oath. The case was likened to that of *Nares* v. *Rowles*, 14 East, 510, where the collector would be bound to return the rates collected to those from whom he received them. Mr. Justice Clayton was of opinion, that, if Lancaster in fact filled the office and discharged its duties, his acts therein were not void; but, being valid, he could give an indemnity for those who were interested in their performance. He rested for authority on *United States* v. *Maurice*, 2 Brock. 96, and *Jones* v. *Scanland*, 6 Humph. 195. In the latter case, a defaulter (who by the Constitution of Tennessee was ineligible to office) was elected sheriff. The defence made to the suit on his bond, for failure to pay over taxes collected, was that the election was void. But the court, after conceding the premises,' declared, " that by thus intruding himself into the office he became sheriff *de facto*, and those who voluntarily bound themselves for the faithful performance of his duties cannot absolve themselves by insisting that he was no sheriff." In *State* v. *Bartlett*, 30 Miss. 624, the bond of the treasurer of

the township school fund was not required by law. Commenting on that circumstance, the reasoning of the court is to the effect that, since our statute allowed a bond to be impeached by plea, the bond was not a good voluntary bond at common law ; but the court said : " If there was any statutory provision requiring such bond to be given as a condition precedent to entering upon the discharge of the duties of the office, and in the execution of the bond there had been some departure from the statute, or failure to comply with its provisions, the bond might be sustained as a valid common-law obligation, because the giving it was a condition precedent to taking possession of the office ; and the party having entered upon the office, and attempted to perform its duties and received its emoluments, could not be heard to say that he had violated the law in so doing. But the rule is very different where no such bond is required." *County of De Soto* v. *Dickson*, 34 Miss. 150, follows the opinion of Sharkey, C. J., in *McNutt* v. *Lancaster*, and holds the bond to be void because the tax-collector's oath was not indorsed on it. The court say, The collector was elected November, 1853, and the bond appears to have been executed 1st January, 1855. The bond was *prima facie* invalid, as nothing authorized it at that time. The special circumstances may have been replied. The peculiar phraseology of the statutes, and the interpretation of them, will explain the apparent conflict between some of these cases and those from other States.

All the acts of the tax-collector being absolutely void, and the doing of them a crime subject to indictment and punishment, made him responsible to the parties from whom he had received taxes, for repayment, they remaining debtors to the State and county. In that view of the subject there had been no legal payment of the taxes and no discharge of the debtors. The collector was a trespasser, and, as such, amenable to every person from whom he extorted money. If the opinion of Judge Clayton in *McNutt* v. *Lancaster* had prevailed, the collector, being in discharge of the duties of the office, would, notwithstanding his neglect to take the oath, have been a *de facto* officer, all of his doings would have been valid so long as the State acquiesced, that is, took no steps to remove him, and

neither he nor his sureties could set up failure to take the oath, to relieve them from liability.

There can be hardly a doubt, if *McNutt* v. *Lancaster* had depended on the statute as in the Code of 1857, there would have been no difference between the judges, but that the views of Judge Clayton would have been those of the court.

We have been brought to these conclusions: That Cooper, having been appointed to office by authority not known to the laws and Constitution, and there being no power in the board of supervisors to proceed as in case of vacancy, and the magistracy of the State being subordinate to the military power, it must be assumed that this bond was executed according to the pleasure of that authority; that although the bond was not executed as to time as prescribed by the statute, the only consequence that would flow from it would be that while it was not strictly a statutory security, yet it was a valid contract between the State, or those who exercised paramount public authority, and the obligors; and that remedy may be had for any breach, at the suit of the State or county.

If the conformity of the covenants to the statute converted the *de facto* right of Cooper into a *de jure* right, then it is a statutory bond. If Cooper, notwithstanding the execution of the bond (out of time), might still have been removed from office, he would be but a *de facto* tax-collector, and he and his sureties liable as such; and it is not necessary to the decision of this case to pass on that question. In either event the obligors are estopped to deny that he was sheriff and tax-collector. *French* v. *State*, 52 Miss. 759.

Is the board of supervisors a proper usee? Sect. 271 of the Code 1871 is to the effect that, for default made by the collector, the county treasurer shall cause suit to be brought "*for the use of the county*." Sect. 1725 of the Code directs the county treasurer to notify the district attorney to sue, and shall furnish him a statement of amount of taxes not paid in; which shall be evidence, &c. (not conclusive), but " competent evidence." By § 1723, Code, moneys collected in such suits are required to be paid to the county treasurer. The board, by § 1385, Code, may employ counsel in all civil cases in which the county is interested, and in all matters in relation to county taxes, who

may, conduct the proceedings instead of the district attorney. *Lewenthall* v. *State*, 51 Miss. 650, passes upon § 1384, and is conclusive of the right of the board of supervisors to sue. " And the board of supervisors are authorized to sue . . . in all matters in which the county may be interested." In what " matter " is the county more interested than its revenues from taxes ? If the recovery should be had by the board as usee, the county treasurer is the proper officer to receive and receipt for the money. It seems to us immaterial whether the usee is the board of supervisors or the treasurer: in either case the county treasurer must be the recipient of the money.

It was also objected that suit could not be brought by counsel selected by the board of supervisors: the statute, § 1385, expressly authorizes it. *Lewenthall* v. *State, ubi supra.*

After careful consideration of all the material questions raised by the demurrer, we are satisfied that there is error.

*Judgment reversed, demurrer overruled and cause remanded for further proceedings.*