### WILLIAM A. CLARK v. WILLIAM ENNIS.

1. When a statute declares that if a sheriff shall not renew his bond within a specified time, his office shall immediately expire and become vacant, a failure to renew the bond within the prescribed time does not *per se*, vacate his office. He is an officer with a defeasible title until the judgment of forfeiture is pronounced in due form, and all his acts prior to such judgment are valid as to the public and third persons.

2. The tenth section of our act concerning sheriffs provides: "That if any sheriff, for the time being, of any county shall neglect, refuse, or be unable to give bond with sureties as aforesaid, agreeably to the directions of this act, at the time or times herein limited, the office of such sheriff shall immediately expire, and be deemed and taken to be vacant, and if such sheriff shall thereafter presume to execute the office of sheriff, then all such his acts and proceedings done under color of office shall be absolutely void, and he shall for such offence be liable to be indicted for a misdemeanor, and, on conviction, fined in any sum not exceeding two thousand dollars." *Held,* that where a sheriff has failed to renew his bond within the limited time, all his acts prior to proceedings by the thirty-seventh section of the act directed to be taken to declare the office vacant, are valid as to the public and third persons.

On motion to quash the service and return of writ of summons.

Argued at November Term, 1882, before Justices DEPUE, VAN SYCKEL and REED.

For the plaintiff, *R. V. Lindabury.*

For the defendant, *F. Bergen.*

Clark v. Ennis.

The opinion of the court was delivered by

VAN SYCKEL, J. In this case summons was issued on the 27th of December, 1882, returnable on the 30th day of the same month. It was on the same day served by Thomas Forsyth, as sheriff of the county of Union, on the defendant, and duly returned.

Motion is made to quash the service and return on the ground that Forsyth had no authority to act as sheriff.

For the purposes of the motion it is admitted that Forsyth was elected sheriff of the county of Union at the annual election of members of the general assembly in the year 1881 ; that he gave bond, took the oath of office, and was regularly commissioned within the time prescribed by law, and that he thereupon entered upon the office of sheriff of said county, and has discharged the duties and received the emoluments of the same ever since.

Subject to exception on the part of the plaintiff as to its competency, it is further admitted that Forsyth did not renew his bond in November, 1882, but that he did renew it on December 27th, 1882, before the service of said summons, and that said renewal in all respects complied with the requirements of the statute, save as to time only ; and further, that said new bond bears date on November 13th, 1882, and was filed on the day of its execution and before the service of said summons.

The constitution of this state provides that " sheriffs and coroners shall be elected by the people of their respective counties at the elections for members of the general assembly, and they shall hold their offices for three years, after which three years must elapse before they can be again capable of serving. Sheriffs shall annually renew their bonds." ,

The motion to quash is based on the provisions of the second and tenth sections of our Sheriff's act.

The second section provides, " that the judges of the Courts of Common Pleas in the several counties of this state, shall meet at the office of the clerk of the said court, in their respective counties, on the first Tuesday after the close of the

annual election of members of the general assembly, on the penalty of fifty dollars for each defaulter, to be sued for and recovered by the collector of the said county, and applied to the use of the same, at which time and place the sheriff for the time being, or sheriff elect, as the case may be, of the same county, is hereby required and enjoined to attend, with the certificate of his election, and not less than five sufficient sureties, being freeholders and residents in the same county, to be approved of by the judges then met, or the major part of them, and then and there, before the said judges, with such approved sureties, shall enter into bond for the faithful execution of his office, in the sum of twenty thousand dollars, or in such greater sum, not exceeding fifty thousand dollars, as the said judges, or the major part of them may order."

It is also provided in the same section' that the bond shall be approved by the judges and filed in the office of the county clerk.

The tenth section provides, " that if any sheriff for the time being of any county shall neglect, refuse, or be unable to give bond with sureties as aforesaid, agreeably to the directions of this act, at the time or times herein limited, the office of such sheriff shall immediately expire, and be deemed and taken to be vacant, and if such sheriff shall thereafter presume to execute the office of sheriff, then all such his acts and proceedings done under color of office shall be absolutely void, and he shall for such offence be liable to be indicted for a misdemeanor, and, on conviction, fined in any sum not exceeding two thousand dollars."

This section unquestionably applies to the failure to give the renewal bond required to be executed annually.

The defendant insists that by the mere operation and effect of the statute, the office of Forsyth expired on his omission to renew his bond on the 14th day of November, 1882, and that all his official acts since that time, under color of said office, are absolutely void, not only as to the sheriff himself, but also as to the public and third persons.

It is important to be observed that by the second section

the judges of the Court of Common Pleas are required, under a penalty for default, to meet at the clerk's office, in their respective counties, on the first Tuesday after the close of the annual election for members of the general assembly, at which time and place the sheriff is enjoined to attend, with the certificate of his election and not less than five sufficient sureties, to be approved by said judges, and then and there enter into bond for the faithful execution of his office.

No record is required to be made of this proceeding other than the approval of the judges endorsed on the bond and the filing of said bond in the clerk's office.

The sheriff complies with the requirements of the law by appearing with five sufficient sureties ready to execute his bond, and if the judges of the court fail to attend there will be no entry, record or writing to show whether or not the sheriff has performed his duty.

No inference, therefore, that the sheriff is in default can properly be drawn from the fact that a renewal bond is not filed in the clerk's office as required by the statute.

Forsyth was in office under a commission for three years, the tenure fixed by the constitution. The renewal of his bond was not a condition precedent to the taking of his office. His failure to renew operated as a defeasance.

It is clear, I think, both upon reason and authority, that a statute declaring an office vacant for some act or omission of the incumbent, after he enters upon his duties, does not execute itself. Whether the cause of forfeiture has arisen, whether the default in this case is the default of the court or the sheriff, is a question to be determined upon the application of legal rules to facts to be ascertained and settled in the due course of proceeding, in the presence of the officer to be affected.

The law of Alabama provides that the sheriff's bond must be filed in fifteen days after election, and that if he fails to give bond within the limited time, he vacates his office.

In *Ex parte Candee*, 48 *Ala.* 386, it was held that the failure to file the bond within fifteen days after election did not vacate the office. That such failure might be a cause of for-

feiture and vacancy, which could be taken advantage of and enforced by the state in a proper judicial inquiry instituted for that purpose.

In *State* v. *Cooper*, 53 *Miss.* 615, it is said : "Although the statute declares that if the oath be not taken, and bond executed within a time named, the office shall be vacant, yet if the person elected or appointed has entered upon the office, and the proper authorities have taken no steps to remove him, the statute does not work that effect."

In *Sprowl* v. *Lawrence*, 33 *Ala.* 674, the statute being as hereinbefore mentioned, it was said : "A failure of the sheriff to renew his bond within the time prescribed by law only renders him liable to a proceeding for forfeiture, but does not, *per se*, operate, &c., his instantaneous removal from office."

In Kentucky the law declares that if a sheriff shall fail to take the oath of office and give bonds within thirty days after notice of election, his office shall be considered vacant. In *Stokes* v. *Kirkpatrick*, 1 *Metc.* (*Ky* ) 138, a motion was made to set aside the return of a summons, on the ground that the sheriff had not filed his bond. The court said : " The provisions of the act cannot be construed as abrogating the ancient and well-established rules and principles applicable to the vacation or forfeiture of offices, according to which such vacancy or forfeiture can be declared only by a direct proceeding."

In *State* v. *Toomer*, 7 *Rich.* 216, it is said that the laws of South Carolina provide that the sheriff shall, within three weeks after his election, tender his bond to the proper officers for approval, and immediately thereafter deposit the same with the treasurer, and sue out his commission, " and upon his neglect or failure to do so within the said time, his office shall be deemed absolutely vacant, and shall be filled by election or appointment, as heretofore provided." And it is further provided that the sheriff shall, within ten days after receipt of his commission, take certain prescribed oaths, " and unless the said oaths be so taken, endorsed and subscribed within ten days from the issuing of said commission, the said commission shall be utterly null and void, and the said office

deemed absolutely vacant." The sheriff did not take out his commission or give bond, or make oath until some time after the limited period. The suit was on the bond. The court said : " To hold the office forfeited for failure to file the bond, &c., absolutely, and in a collateral proceeding, would be to come in conflict with every respectable judicial adjudication on this branch of the law ; for in all these we find the doctrine broadly affirmed that the only efficacy that is imparted to the official title by a strict compliance with the provisions of the act, such as the execution of the bond, &c., is merely to protect it against forfeiture at the instance of the state. But if instead of enforcing the forfeiture the state sees fit to excuse the delinquency of the officer, the defects in his title, whatever they may be, are completely cured. * * * The only acts he omitted to do in order to complete his *de jure* title were the filing of the bond and suing out of the commission. These were matters, however, which alone concerned the state, and with which the public had nothing to do. * * * He had a *de facto* title—the only one in which the public had any interest."

In *Crawford* v. *Howard*, 9 *Ga.* 314, a sheriff was elected, entered upon the duties of his office, but did not give bond until after thirty days. The law declared that if he did not give bond within thirty days, "his office shall be vacant." The court said : " The judgment of the law is that if he fails to qualify, he forfeits the rights to the office under his election, but the proper officers of the law must pronounce the judgment of forfeiture, then he would be an usurper, and after that his acts would be void. Upon *quo warranto* we do not doubt that it would be competent for him to show that the irregularity in giving the bond was without fault on his part."

In *State* v. *Carneall*, 10 *Ark.* 156, the court held that an officer installed into office cannot, within the constitutional period of his term, be deposed from office by an *ex parte* certificate of neglect of official duty without notice or trial.

The state constitution of Michigan provides that " a sheriff may be required by law to renew his security from time to

time, and in default of giving such security, his office shall be deemed vacant."

A statute passed to enforce this provision made it the duty of the sheriff to renew his bond within twenty days after the 1st day of January in each year.

In *Dunphy* v. *Whipple*, 25 *Mich*. 10, the sheriff had failed to renew his bond. Mr. Justice Cooley, in delivering the opinion of the court, said : " There may possibly be a question whether that provision of the constitution is designed to go further than to authorize the legislature to require new security, and to provide for treating the office as vacant should he fail to give it; however that may be, if he continues in office and remains sheriff *de facto*, there can be no doubt, we think, that he is in by virtue of his election."

On this view of the law, the sureties on the original bond were held liable for breach of the sheriff's official duty.

The statute law of Mississippi provides " that unless a sheriff already in office gives new bond on or before the first Monday in August, he shall thereby forfeit his office."

In *Hyde* v. *State*, 52 *Miss*. 665, the court declared that it was a judicial question whether there had been a forfeiture which was to be determined by *quo warranto* proceedings.

The statute also requires the board of supervisors to order an election in case of such forfeiture. It was also held that this provision did not confer upon the supervisors the power of judicially ascertaining the forfeiture and necessity for a new election.

In *State* v. *Cooper*, 53 *Miss*. 615, it was adjudged that the failure of the sheriff to make the bond within the time limited in the code of 1857, did not, *ipso facto*, vacate the office. It is a cause of forfeiture, but the declaration of the consequence must be made. The statutory declaration that the office shall be vacant, unless certain statutory things are done, did not of itself make a vacancy, for steps must be taken to fill the place by election or appointment. All the acts of the sheriff *virtute officii*, after the alleged default, were held good as to the public and third persons as those of a *de facto* officer.

In *Bac. Ab.*, *tit.* "*Office and Officers*," § (*E*,) refer-to the old test acts, it is said: "Though the words of the above act of 13 *Car.* II., are so very strong as to make such election, &c., void, and those of the 25 *Car.* II., to make such persons disabled in law to all intents and purposes what-soever to have, occupy or enjoy the said offices; yet it hath been strongly holden, that the acts of one under such a dis-ability, being instated in such an office, and executing the same without any objection to his authority, may be valid as to strangers; for otherwise, not only those who no way infringe this law, but even those whose benefit is intended to be ad-vanced by it, might be sufferers for another's fault, to which they are no way privy; and one chasm in a corporation, hap-pening through the default of one head officer, would per-petually vacate the acts of all others whose authority in respect of their admission into their offices, or otherwise, may depend on his."

In *Foot* v. *Stiles*, 57 *N. Y.* 399, where the statute provides that an officer, by failure to file his bond, shall forfeit his office, the court said: "It is plain that the failure to file the bond is a cause of forfeiture. The office in that case does not, *ipso facto*, become vacant, but there must be a direct judicial or other authorized proceeding on the part of the proper au-thority to enforce the forfeiture. The act resembles a cause of forfeiture of a franchise or corporate charter, which is only enforceable by a proceeding in the nature of a *quo warranto*."

The rule recognizing the validity as to third persons of the acts of *de facto* officers has been broadly asserted in this state, where neither the title of such officer nor the legality of his acts can be indirectly called in question in a proceeding to which he is not a party. *State, ex rel. Mitchell,* v. *Tolan,* 4 *Vroom* 196; *State, Hoey, pros.,* v. *Collector of Ocean,* 10 *Vroom* 75.

If the sheriff's act contained no other provision in this re-spect than so much of the tenth section as provides that for neglect to give bond the office shall expire and be deemed and taken to be vacant, it is clear that Forsyth would still be in office with a defeasible title until judgment of ouster, and that

the validity of his acts as to third persons could not be challenged.

This rule is founded in public policy and has the sanction of universal approbation by the courts as absolutely essential to the protection of the citizen who is compelled to deal with public officers.

The consequences of sweeping away this salutary rule will be so disastrous that it must be assumed that it was not within the legislative intent to do so, if the language of the act is susceptible of any other interpretation.

The tenth section provides that if any sheriff shall neglect, refuse or be unable to give bond at the time limited, the office of such sheriff shall immediately expire, and be deemed and taken to be vacant; and if such sheriff shall thereafter presume to execute his office, then all such his acts done under color of office shall be absolutely void.

"Thereafter" in this section is susceptible of two interpretations. The one, that all acts done under color of office, after the default which occasions the forfeiture, shall be void; the other, that all acts done under color of office after the office shall be deemed and taken to be vacant, by reason of the alleged default in giving bond, shall be void.

In the absence of unmistakable language indicating a purpose to sweep away the rule as to *de facto* officers, which has been so rigidly enforced in this state, as elsewhere, it must be presumed that the latter construction expresses the legislative intent, and that however unlawful and without authority such official acts may be, so far as the officer himself is concerned, they shall be regarded as valid as to the public and third persons until, in the manner duly prescribed by law, the office shall be deemed and taken to be vacant by reason of the alleged default.

In virtue of his election and induction into office, the sheriff enters upon a term of three years. *Prima facie* he is entitled to perform the functions of the office for that full period of time, and to remain in office for the term under a color of title, although he may have done or omitted

some act, the consequence of which is a forfeiture of his office. Of the existence of a cause of forfeiture, third persons and the public must be ignorant for a time at least, and it would be in the last degree unjust to visit upon them the punishment for the delinquencies of the officer. The necessity for the interposition of some tribunal to declare the default is inherent. It would be as reasonable to assert that the statute imposes upon Forsyth the fine denounced in the tenth section, without previous trial and judgment, as to say that it is self-executing in vacating his office. In the absence of statutory provision, the only mode in which an office can be deemed and taken to be vacant is by proceedings in the nature of *quo warranto.*

The framer of the Sheriffs' act has incorporated in it a provision by which the office may be declared to be vacant, and thereby the tenth section enforced.

The thirty-seventh section provides that as often as the office of sheriff shall become vacant, it shall be the duty of the judges of the Court of Common Pleas of said county, or any three of them, forthwith, as soon as may be after information or knowledge of the happening of such vacancy, to direct the clerk of such court to certify the fact of vacancy to the governor, and the clerk of the court shall immediately certify the same, under his hand and the seal of said court, to the governor, who shall forthwith fill such vacancy by appointment until the next annual election.

This section prevents the delay which would be consequent upon *quo warranto* proceedings, and gives a speedy mode in which the office shall be deemed and taken to be vacant. It is in aid of the established doctrine that proceedings to enforce the forfeiture of a public office must be instituted by and emanate from the public authorities.

The authority to the Common Pleas to ascertain and declare the vacancy and the appointment by the governor, do not conclude the sheriff as to his right to the office.

The act does not provide for a trial, no notice to the sheriff is required, and it manifestly is not contemplated that he is to be made a party to the inquiry. Its object is to provide

for a summary official declaration which will appear of record of the existence of the fact which works the vacancy, for the information of the public and to secure the appointment of a successor until the next election.

It is not necessary to discuss the question whether the legislature can deprive the sheriff of his office for mere unintentional omission to renew his bond on a given day, after he has received his commission and is in office for a term fixed by the constitution at three years.

It presents a question somewhat different from that which arises when he fails to give the original bond required of him prior to the granting of his commission and his induction into office.

This controversy involves the validity of official acts only so far as they affect the public, and does not otherwise relate to the validity of the sheriff's title to his office. The intention, however, cannot be imputed to the law-maker by the *ex parte* proceeding prescribed in section 37, to strip the officer of his title without notice, hearing or even the form of a judicial trial. Such an assumption is forbidden by an underlying principle which has received universal recognition in the administration of justice.

The sheriff, after the Common Pleas declared the vacancy, would still be in under color of office; he would still be *de facto*, if not *de jure*. He might persist in asserting his title to the office until judgment of ouster against him, and refuse to yield its tenure to the governor's appointee. Therefore it was necessary to incorporate in the tenth section the provision that all his acts thereafter, under color of office, shall be void.

If, after the official declaration of a vacancy and appointment by the governor, he continued to act under color of his office, he would not only do so at his peril, but his acts thereafter, being declared void, the public would be deterred from recognizing him in an official capacity.

That the legislature did not intend to make the sheriff's acts void as to the public, until by this official proceeding his office

is deemed and taken to be vacant, is the reasonable construction of the act as a whole, and the only interpretation that harmonizes with settled rules hitherto deemed absolutely essential to the protection of the innocent.

The neglect of the sheriff is known at once to the judges of the Common Pleas, by whom the renewal bond is to be approved. The direction to the said judges forthwith to declare the vacancy shows that it was contemplated by the law-maker that notice to the public of the delinquency should be simultaneous with and essential to the operation of the law to make the acts of the sheriff invalid as to third persons. Until such proceedings are instituted, the reason and spirit of the law is that all persons who deal with the sheriff, officially, have the right to presume that there is no default on his part.

The law was framed to punish the sheriff and save the public from loss by reason of his neglect, not to punish the public and jeopardize the most important interests by withdrawing the protection of the rule as to *de facto* officers, without which universal experience has shown that justice cannot be administered.

The thirty-ninth section of the act, which provides that in case of vacancy the coroner shall have full power and authority to execute all the duties of the sheriff's office, surely cannot be interpreted to mean that the coroner shall assume to decide for himself that the sheriff has committed an act which forfeits his office, and set himself up as a rival occupant of the position before any step is taken by the state to enforce the forfeiture.

The word "vacancy" is used in no such sense in this statute. The law never invites such conflict of authority, but provides legal methods for the settlement of questions so essential to the peace and well-being of society.

If the acts of the sheriff are absolutely void prior to any official declaration or judicial determination that there is a vacancy, then this question can be raised collaterally, and this controversy introduced into every cause in which the rights of the parties depend upon any official act of a sheriff.

In all suits relating to official sales by sheriffs, and titles to

Clark v. Ennis.

land derived through them, the question could be raised collaterally, to be determined exclusively by oral proof, whether the officer had in due form on a given day renewed his bond or attended at the clerk's office for that purpose. It will also be observed that it is not necessary, in the prescribed form for approval of the sheriff's bond, to insert the date on which such approval is actually made.

This leaves the time of actual execution and approval of the bond open to controversy. There being no limit of time within which this question shall be started, it would introduce into all titles derived through judicial sales an element of the most alarming uncertainty.

Whether the judges of the court or the sheriff was in default, whether the sheriff attended with five sureties or a less number, whether they were all of sufficient ability, whether they were improperly rejected by the judges, whether the sheriff remained at the clerk's office as many hours as he should to await the appearance of the judges, and whether all the judges were present and remained for a proper period to await the attendance of the sheriff and his sureties, are questions which would be interjected into every suit affected by the sheriff's alleged delinquency; questions of fact which might be decided one way in one controversy, and a different way in another, according to the credit given by the jury to witnesses. Can it be conceived that it was the purpose of this legislation to inaugurate such a procedure?

No possible construction of this law can be so absurd and unjust as that which would impute to its draftsman an intention to produce such results.

I cannot accede to an interpretation of the statute so full of mischievous consequences, and so subversive of principles shown by long experience and by general acceptance to be founded in the highest wisdom.

My conclusion is that in this collateral proceeding it is not competent to introduce testimony to impeach the sheriff's title to his office. That the statute declaring that the office shall expire by his neglect to do a specified act is not self-executing,

Freeholders of Mercer v. Penna. R. R. Co.

and that all his acts done under color of office, until in due form of law his office shall be deemed and taken to be vacant, must be regarded as valid so far as concerns the public and third persons.

The motion to quash is denied.