### SMITH & BONDURANT *vs.* MEADOR.

1. Commercial notaries public are public officers, whose duties, oaths and powers are prescribed by law. They are appointed for four years, but upon the expiration of that time, a commercial notary and his office do not cease, but he continues to hold his position until a successor is appointed, or he is removed.
2. If, after the expiration of the term for which a commercial notary was appointed, and before that fact was discovered, he attested an affidavit, both parties acting in good faith, if not an officer *de jure*, he would, in such transaction, be an officer *de facto*, and his attestation would not be void.
(*a.*) The doctrine of the recognition of the acts of *de facto* officers is founded on considerations of public policy.
   HALL, J., concurred.
   BLANDFORD, J., dissented.

April 2, 1885.

Officers. Notaries Public. Assignments. Before Judge HAMMOND. Fulton Superior Court. September Term, 1884.

Smith & Bondurant sued Rushing, Keller & Company and garnished Meador. The latter answered that he had received certain effects under a deed of assignment from defendants; that the official attestation of this deed and of the affidavit attached thereto, as required by the statute, was by one Woodson, who had for years been a commercial notary public at a bank in Atlanta; that he is informed, and believes, that defendants and Woodson both believed that he was still a notary when he signed as such, but subsequently it was discovered that the term of four years for which he had been appointed had expired, and he re-

newed his commission. On this answer, plaintiffs moved for judgment, insisting that the assignment was void for want of proper attestation by an authorized officer. The court refused the motion, and plaintiffs excepted.

C. H. & R. B. BARNES, for plaintiffs in error.

HOKE SMITH; B. F. ABBOTT, for defendant.

JACKSON, Chief Justice.

The legal question which this record makes is, whether a deed of ·assignment is void because the affidavit thereto was made before a commercial notary public a few days after the expiration of his term of office, and before the renewal of his appointment; and that question turns on this, was he then a *de facto* officer, and if not, then, under our statute, is he *de jure* an officer? And that turns upon this, is the commercial notary a public officer?

1. Public officers hold over until successors are appointed. Code, §132. Notaries public for commercial purposes are public officers. They are appointed by the judges of the superior court. Code, §1497. They take an oath before the clerk of the court. §1498. They hold their offices for four years. §1499. They are sworn, like all public officers, that they are not holders of public money belonging to the state. §1498; also §129, sub-section 2. Removal from the county vacates the office. §1501. "They may administer oaths in all matters incident to them as commercial officers, and all other oaths which are not by law required to be administered by a particular officer." §1502, sub-section 4. Each notary must have "a seal of office, which shall have for its impression his name, officially, and the name of the state and county for which he was appointed," and "he must keep a fair register of all his notarial acts, signed by him, together with the date of the transaction."

So that it seems clear that they are public officers, whose

duties are regulated by law, whose oaths are prescribed and recorded on the minutes of the court, and who are authorized to administer any oath not confined by law to a particular officer, and, therefore, this oath to an assignment. It follows that, until a successor was appointed or he was removed (Code, §1499), his office continued, and he remained *de jure* the notary for the bank where he acted, and filled that public office for the public as a commercial notary, and empowered to administer this oath to this assignor.

2. But suppose he was not *de jure* a public officer, was he not *de facto* such, and his acts good, when done in good faith by him for any of the public also acting in good faith? We think so most clearly. These *de facto* officers, their official acts, *colore officii*, must be recognized for public safety. The security of property, the vital interests of society, demand the recognition of their acts. It has been our law, or rather, that of our ancestors, ever since the war of the Roses in England, when the king, the fountain of office there, was changed by the winds of revolution, and with him, his appointees were swept from rightful or *de jure* offices, but all their acts while in office were held binding and valid—made so by statute and observed by both sides—all being recognized as *de facto* officers.

It is said that, because the number of these commercial notaries is not fixed by law, therefore they are not *de facto* officers when holding over, because they have no successors.

It strikes us that the argument is nothing else than a *non sequitur*. Whether one or a hundred fill the office, it is still an office. If, at the option of the appointing power, one may be enough or one hundred may be necessary in county or city, the office is still public, and successors are appointed for those who go out. But in the case before us, this notary public was appointed and acted for and at a bank, a necessary officer there, and when it was ascertained that his term of four years had expired, he was reappointed. Suppose another had been appointed and he

had been rejected by the judge, would not that other have been his successor? Most assuredly. So that this office at this bank is a public office, administered by a man appointed to it, not by the bank, but by the state; not for the bank alone, but for the whole public, the bank and all dealing with it, or not dealing with it at all, but desiring: an official act to be done by this appointee of the state about any business entrusted to him by the state; and: even if out *de jure*, because his term of four years was. gone, the act was that of a *de facto* officer, who had not. been removed and to whose office no successor had been. appointed.

The principle on which the whole doctrine of the recognition of *de facto* officers and their acts rests, is not how· they happen to act *de facto*,—whether the cause be an illegal appointment or election, or an illegal holding over, but it is the convenience of the public—the necessity of the· thing—the impossibility of one always knowing when an. officer to whom he goes on business of a ministerial character is legally in office, was properly elected or has held too long; it is that, where the public servant is acting in· the place apparently all right, and the applicant to him. in good faith has a deed witnessed or an oath administered,. that it is better for society that the act *de facto* stand than· that the business of society, the title to property, be all · wrecked, because parties did not know that the term of ' office of the public official expired the day before.

See 53 Mo., 334; 37 Maine, 427; 9 Am. R., 431; Cro.. Eliz., 699, 533; 1 Moore, 109; 1 Ld. Raym., 658; 12 Modern, 467, cited by defendant in error. See also 19 Am. D., 63· (n); 4 Iredell, 368; 9 Am. R., 434 (n); 74 Ala., 411 ; 9 *Ga.*, 314, particularly p. 316, opinion of court; 5 *Id.*, 243 (4);· 11 *Id.*, 426 (2); 14 *Id.*, 192 (2); 20 *Id.*, pp. 748, 749, (3), (4); 44 *Id.*, 454; 52 *Id.*, 239 (6); 63 *Id.*, 527, where the· doctrine is applied even to the intendant and commission-· ers of a town in levying taxes. The case of Cary *vs.* The· State, determined by the Supreme Court of Alabama at its.

December term, 1884, in a very able and exhaustive opinion by Somerville, Justice, was cited by counsel for plaintiff in error, who was misled by a newspaper syllabus of it; but it is fully on the line of this opinion and the authorities cited above, and we are indebted to Mr. Barnes, since his citation of the syllabus on the hearing of this cause, for the full text of the opinion. Misled himself by the syllabus, he acted as upright counsel always should when he furnished us with the opinion in full.

Judgment affirmed.

HALL, Justice, concurred, but furnished no written opinion.

BLANDFORD, Justice, dissenting.

I dissent from the opinion of the majority of the court in this case. Notaries public, known as commercial notaries, are to be appointed by the judges of the superior courts of the several counties of this state, and are to hold their offices for four years, and at the end of that time, if continued, their appointment must be renewed on the minutes of the court. Code, §§1497 to 1503, inclusive. The act of 1868, which is codified in the sections referred to, makes no limit as to the number of these officers, who may be appointed by the judge of the superior court in any county. In my judgment, it is the act of appointment by the judge of the superior court which creates the office and makes the officer; without this act, there is no office and no officer, and when the time expires for which the office was created and the officer appointed, the office ceases and no longer exists, and the officer likewise ceases to exist as an officer. It is as if no such office had ever been created or officer appointed. After the determination of the office by the expiration of the time for which the officer was appointed, the officer cannot exercise any function pertaining to the office, which does not exist; if, however, the person who formerly exercised the functions

of such office, when it did exist, continues to hold himself out to the world as such officer, and to perform acts that formerly pertained to such office, such acts are mere nullities and are void. There can be no such thing as a *de facto* officer in respect to an office which does not exist. Hence, I hold that the affidavit before the pretended notary public was a mere nullity. 1 Carter (Ind.), 500; 64 Mo., 58; 5 Wait Act. and Def., 7; 20 *Ga.*, 750; 63 *Id.*, 527; 2 Bishop Crim. Law, 464.

It is admitted that no indictment for perjury could be maintained against the affidavit in this case; the majority of the court concede this. Yet our statute of assignments denounces the penalty for perjury against one who makes a false oath in a case of this kind. Rex *vs.* Verelst, 3 Camp., 433; Rex *vs.* Roberts, 14 Cox's Crim. Cases, 101; 3 McCord, 308; 2 Bishop's Crim. Law, sec 1021, p. 573.

A proposition or conclusion may be announced as common sense, good sense, but whether it be so or not depends upon its truth. If it be common sense or good sense, then it is true, otherwise it is nonsense and error. The human mind often arrives at conclusions by a process of its own, unknown to the thinker, which he announces as common sense or good sense. Whether the conclusion be true or not, depends upon the fact whether the mind had reasoned correctly and drawn a logical conclusion or not. If the proposition announced as common sense or good sense cannot stand the test of good logic, it is error and is not entitled to further consideration.

I think the jugdment should be reversed.