32926, 32927.   RUST *et al v.* PRODUCERS CO-OPERATIVE
                EXCHANGE, INC. (two cases).

DECIDED MARCH 16, 1950. REHEARING DENIED MARCH 28, 1950.

*Harry E. Williams, Mrs. Mary J. Nelson, William F. Buchanan,* for plaintiffs in error.

*R. M. Reed, Neely, Marshall & Greene, W. Neal Baird,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ The affidavit in garnishment is sworn to by R. M. Reed as agent for Producers Co-operative Exchange Incorporated. The bond signature contains the typewritten words, "Producers Co-Operative Exchange, Inc. (Seal), Principal, By_____; Hartford Accident and Indemnity Company (Seal) by *R. B.*

*Chambers,* Attorney in Fact, Security." Counsel for the garnishees contend that it is apparent from the record that no one signed as an officer of the plaintiff corporation so as to bind the principal on said bond, as a consequence of which the court had no jurisdiction to issue any summons upon said garnishment. In substance, the garnishees contend that the bond, not having been signed by the principal, is void; that by reason of the bond being void, the garnishment proceedings are void, and that by reason of the garnishment proceedings being void, the judgment against them is void. It follows that if the bond is a valid bond the proceedings based thereon are valid and culminated in a valid judgment against the garnishees. The bond is not conditioned as required by statute, in that the signature of no agent of the principal appears thereon. However, a statutory bond, not duly executed, may still be sustained as a common-law bond. *Stephens* v. *Crawford,* 3 *Ga.* 499; *Crawford* v. *Howard,* 9 *Ga.* 314; *Wall* v. *Mount,* 121 *Ga.* 831 (49 S. E. 778); *Williams* v. *Mitchem,* 151 *Ga.* 227 (106 S. E. 284); *Paxson* v. *Planters Warehouse & Loan Co.,* 20 *Ga. App.* 267 (92 S. E. 1023); *McCorkel* v. *J. J. Whitten & Son,* 26 *Ga. App.* 707 (107 S. E. 97); *Graves* v. *Campbell,* 33 *Ga. App.* 505 (126 S. E. 854); *U. S. Fidelity & Guaranty Co.* v. *McCurdy,* 51 *Ga. App.* 507 (180 S. E. 902). In 11 C. J. S., *Bonds,* § 16, it is stated: "In the absence of statute, where a bond is sealed and delivered, it is not essential to its validity that it be signed by the obligor. . . Independent of any statutory requirement the manner and form of the signature, when made, is immaterial, provided it is made by the obligor for the purpose and with the intention of binding himself." In this case, the only signature of the principal was the typewritten name "Producers Co-Operative Exchange, Inc." But the bond was properly signed by the surety, and the obligation of the surety is not in any way conditioned upon the form of signature of the principal. The bond was made at the instance of the principal with the evident intention of binding itself, and was acted upon by it, and was signed by a surety at its instance. The principal is therefore estopped to deny its validity. The case was tried on the assumption that the bond was sufficient, and no complaint was made concerning it until after judgment. Counsel for the garnishees rely upon *Mayo*

v. *Renfroe,* 66 *Ga.* 408 (4), a case dealing with the bond of a public official, in his contention that a bond not signed by a principal is invalid, but in that case the bond was never accepted and its invalidity is based upon another ground. Contrariwise, it was held in *U. S. Fidelity & Guaranty Co.* v. *McCurdy,* supra, that the liability of a surety on the joint and several bond of a public officer, where the principal acts and receives public moneys thereunder, is not affected by the failure of the principal to sign the bond, and that the same may be enforced as a valid common-law obligation. Although this court in that case had under consideration the bond of a public official, a careful examination of the opinion, written pursuant to an answer of the Supreme Court to a certified question (*U. S. Fidelity & Guaranty Co.* v. *McCurdy,* 180 *Ga.* 683, 180, S. E. 633), leads us to the conclusion that the doctrine of estoppel applies against the principal on private as well as public bonds when such principals have acted upon and received benefits under such bonds. Foreign persuasive authorities herein cited also support this view. In the case at bar, the bond, having been acted upon by the principal whose typewritten signature appears thereon, must likewise be construed as a valid common-law undertaking.

The motion for a new trial was on the general grounds only. It is contended, however, that a new trial should have been granted because the plaintiff in execution, who traversed the answer of the garnishee, failed to comply with the garnishment statute. The original judgment against the defendant Williams was obtained in Greene County. The plaintiff thereafter went before a justice of the peace of Cobb County, pursuant to the provisions outlined in Code § 46-604, and caused the latter to issue a summons returnable to the Cobb County Superior Court. Code § 46-604 provides in part: "and it shall be the duty of the officer serving such summons to return or transmit the certified affidavit and bond, together with his actings and doings thereon, to the superior or justice's court of the county in which such suit shall be pending or judgment shall have been obtained." There is no evidence in the record that this was done. Counsel for the garnishee rely upon *Columbus Iron Works Co.* v. *Pou,* 98 *Ga.* 516 (25 S. E. 571), in their contention

that where this part of the statute has not been complied with there could be no lawful judgment upon the garnishment in favor of the plaintiff, either against a surety or a garnishee. However, in *Carr & Co.* v. *Roney*, 118 *Ga.* 634 (45 S. E. 464) the Supreme Court held this case to be unsound and declined to follow it. The ruling there made was as follows: "Where a garnishment was sued out . . in one county based upon a suit pending in another, it was erroneous to dismiss the garnishment proceeding upon the ground that it did not affirmatively appear from the original affidavit and bond that the officer who took the same had made out a certified copy thereof, and that the officer who served the summons had transmitted such certified copy with his return thereon to the court where the main case was pending." It follows that, while it is necessary that such return be made, there is no requirement of statute that an entry thereof shall be made on the original. It is therefore no ground for reversal that this entry was not made.

■ It is further contended that, since the affidavit in the garnishment proceedings shows it is based upon a judgment rendered in 1940, such a judgment, being dormant, could not be the basis of a valid judgment, and also that, since the judgment was not introduced in evidence, the plaintiff did not carry the burden of proving that he had a valid, unsatisfied judgment. Proof that a judgment is more than seven years old is not conclusive of its dormancy. Code § 110-1001 provides the manner in which judgments may be kept alive. Section 110-1002 et seq. provide the manner of reviving them after they have become dormant. It is the right and duty of the garnishee, after the rendition of a verdict finding him indebted, to inquire into the validity of the judgment on which the garnishment is based. *Ingram* v. *Jackson Mercantile Co.*, 2 *Ga. App.* 218 (2) (58 S. E. 372); *Merchants &c. Bank* v. *Haiman*, 80 *Ga.* 624 (5 S. E. 795). He may raise the point that the garnishment proceedings are based on a dormant judgment and, upon proof thereof, the plaintiff is not entitled to judgment. The purpose of his so doing is to protect himself from twice paying the debt, should it turn out that the plaintiff was not in fact entitled to recover from the original defendant. But in the present case the defendant ad-

mitted the judgment, that it was good and valid, and that he had paid no part of it. Such an admission would be sufficient to protect the garnishee, and to prima facie establish the validity of the judgment sued on. The proof thus meets the requirements of *South Georgia Grocery Co.* v. *Wade-Chambers Grocery Co.,* 12 *Ga. App.* 213 (77 S. E. 6), and *Fagan* v. *Jackson,* 1 *Ga. App.* 24 (57 S. E. 1052), that the plaintiff must show that he has obtained a judgment against the defendant. It is true that money cannot be subjected to garnishment based on a void judgment or a dormant judgment. *Ingram* v. *Jackson Mercantile Co.,* supra. A garnishment proceeding is a distinct suit on a new cause of action. *Anderson* v. *Ledbetter-Johnson Contractors,* 62 *Ga. App.* 732 (2) (9 S. E. 860). It was stated in *Milner* v. *Neel,* 114 *Ga.* 118, 121 (39 S. E. 890): "No court has ever held a judgment void because it was rendered upon a cause of action which had been barred before the commencement of the suit. If a person is sued upon a cause of action which is barred, he cannot fail or refuse to attend the court and allow a judgment to go against him and afterwards claim that the judgment is void." See also *Burch* v. *Wofford-Terrell Co.,* 52 *Ga. App.* 685 (1) (184 S. E. 419). Similarly, it appearing that the duty is upon the garnishee to inquire into the validity of the original judgment against the defendant, he cannot let the judgment go against him and later claim it was void because the statute had run against the judgment on which the garnishment is brought. Where the judgment is not denied, and there is direct evidence of its validity, the burden shifts to him to make this defense before the judgment against him is entered.

■ The ultimate question is whether there was evidence to warrant the jury in finding that the transfer of payments by the garnishee from H. E. Williams Sr. to his son, H. E. Williams Jr., beginning as of April 28, 1948, the day the garnishment summons was served, was a cover-up transaction for purposes of evasion. Before the service of the summons, according to the testimony of the bookkeeper for Rust Cheese Company, checks to H. E. Williams Sr. were made out simply, "H. E. Williams." One of these checks, dated April 22, was in evidence. Notice to produce checks issued subsequently was given, but the checks were not produced. The bookkeeper testi-

fied, "I don't know whether these checks were made out to Mr. H. E. Williams Jr. or Sr. after the time of the service of the summons of garnishment . . I did not produce the other checks and I don't know whether the checks after garnishment were any different from the check produced, but I think they were made out to H. E. Williams without stating Jr. or Sr." The only other evidence is that of the defendant, H. E. Williams Sr., who stated, "I could not continue to operate my milk route after the summons of garnishment was served on Rust Cheese Company. *I then began working for my son in driving the same milk route. He was paid the same commissions. The change was that I told Rust Cheese Company to pay my son rather than me,* and I told them to change the books to the name of my son, H. E. Williams Jr. and to pay him. I and my son live together. He purchased a new truck with his own money, and he continued to operate on the same route I had formerly operated. Since that time I have worked for my son, and my son has repaid me by doing some work for me and money as I needed it."

Under this evidence the jury was authorized to find that H. E. Williams Sr. actually made no change in his employment; that Rust Cheese Company made no change on its books, and that the transaction was a mere cover-up to evade the garnishment proceedings. This case differs from *Rainey* v. *Eatonton Co-Op Creamery,* 69 *Ga. App.* 547 (26 S. E. 2d, 297), cited by counsel for the garnishee, in that there the husband was the defendant in execution, and the evidence showed that over a considerable period of time, both before and after service of the summons of garnishment, checks had been regularly made payable, not to him, but to his wife, the court holding that the jury was authorized to find that the funds so dispersed were a part of her separate estate.

The trial court did not err in overruling the motions in arrest of judgment and for a new trial.

*Judgment affirmed. MacIntyre, P. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING

Counsel for the garnishee insists that the court erroneously construed certain decisions of this court and of the Supreme Court in holding in effect that where a garnishment is sued out

in one county based upon a judgment obtained in another, the garnishment will not be dismissed on the ground that it does not affirmatively appear that the officer who took the same made out a certified copy thereof, and that the officer who served the summons transmitted such certified copy with his return to the court in which the judgment was obtained. Counsel for the garnishee insists that since garnishment proceedings must be strictly construed, the burden of showing the transmission of the certified copy of the garnishment proceedings by the officer is upon the plaintiff in garnishment, and he insists that the cases upon which he relies of both the Court of Appeals and the Supreme Court so hold. He particularly relies upon *Atlanta & West Point Railroad Co.* v. *Farmers' Exchange,* 6 *Ga. App.* 405 (65 S. E. 165). He quotes in his motion for rehearing from page 408 as follows:

"Sections 4715 and 4716 of the Civil Code each prescribe methods by which assets in the hands of a prospective garnishee who resides in a different county from the debtor may be reached. One of the purposes of the provisions of each section, as pointed out by Chief Justice Bleckley in *West* v. *Harvey,* 81 *Ga.* 712 (8 S. E. 450) is 'to show a connection between the garnishment and the proceedings elsewhere in the main case.' See Civil Code, §§ 4549, 4550, 4715, 4716, 4717. The plaintiff in the present case proceeded under the provisions of § 4716. The garnishing judgment creditor did all that it was required by law to do. It made the required affidavit and bond. It then became the duty of the magistrate to make out the certified copy and deliver it to the constable, and the duty of the constable to transmit it to the justice's court of DeKalb County, where the judgment was originally rendered. If the garnishing creditor should be held responsible in any case for the dereliction of officers charged with the performance of a duty, we do not think such a rule should be applied under the facts of this case; for the reason that before judgment was entered against the garnishees the certified copy was filed in the court which rendered the main judgment, and thus the connection between the proceedings in garnishment and 'the main case' was evidenced. The law does not fix a time within which the certified affidavit and bond shall be transmitted; and so far as the rights of any

parties at interest are concerned, it would seem that none of them would be prejudiced if, before the rendition of the judgment against the garnishee, the certified bond and affidavit were in the court in which the judgment was obtained." He then expresses confidence that this court has due regard for the opinions written by Judge Russell when he was on the Court of Appeals, particularly in view of the fact that he later became a distinguished Chief Justice of the Supreme Court of this State.

It will be noted that nowhere in the foregoing quoted portion of Judge Russell's opinion in *Atlanta & West Point Railroad Co. v. Farmers' Exchange,* supra, is it held upon whom is the burden of showing the transmission of the garnishment proceedings. However, in *Central of Georgia Railway Co. v. Dickerson,* 15 *Ga. App.* 293 (1) (82 S. E. 942), a subsequent decision written by Judge Russell, it is held as follows: "Under the provisions of section 5278 of the Civil Code [§ 46-604 of the Code of 1933] it was the duty of the officer issuing the summons of garnishment to make two copies of the proceeding and to return a certified copy of the proceedings to the justice's court in Chattooga County. It must be presumed, in the absence of proof to the contrary, that the magistrate performed his duty. Nonperformance of this duty is not a matter which concerns the garnishee except so far as it may affect the garnishee's interests, and it must be specially pleaded."

At page 296 Judge Russell, speaking for the court, said: "The great bulk of the briefs in this case, the numerous citations of authority, and the earnestness with which the case is argued in the briefs, as well as the well-deserved reputation of the eminent counsel who represent the plaintiff in error, for profound learning, not only in the law but in literature as well, unconsciously impressed us so seriously that we were at first inclined to believe that perhaps the learned trial judge had committed a grave error and had outraged some of the most sacred principles of the law and perverted our Civil Code, to the injury of civil justice, and we suspected that, though the amount involved was small, the case was of serious moment on account of the principles involved, and because of the probable far-reaching consequences of our decision; and we were prepared to proceed to the utmost limit of laborious research in an en-

deavor to ascertain the truth, and, if possible, to administer justice in accordance with the laws of the land, regardless of the fact that the amount involved was small. But as a result of patient investigation we find this case, after all, is of that common variety known as a 'tomtit', though vestured in all the plumage of a peacock. There was no error in any of the rulings of the trial judge, and we are constrained to repeat the inquiry of one of old (afflicted in like manner as we),—'who is this that darkeneth counsel by words?' (Job, 38:2. See also Job, 42:3."

The decision of this court on this question is in substance that, since there was no evidence in the record as to whether the garnishment proceedings were transmitted to the court wherein the original judgment was rendered in accordance with a part of the provisions of Code § 46-604, and since the question was not there raised, it must be presumed, in the absence of a showing in the record to the contrary, that the duty was performed. The burden therefore is on the garnishee to make this showing. This principle is based on *Central of Georgia Railway Co.* v. *Dickerson,* supra, a decision rendered by the Court of Appeals and written by Judge Russell, for whose decisions this court entertains the highest regard.

The remaining question raised in the motion for rehearing is without merit.

*Rehearing denied. MacIntyre, P.J., and Gardner, J., concur.*