71458. FIDELITY & DEPOSIT COMPANY OF MARYLAND
v. WEST POINT CONSTRUCTION COMPANY et al.
(344 SE2d 268)

BEASLEY, Judge.

At issue is whether defendant bonding company is obligated to the general contractor for the subcontractor's default on a project, and, if so, whether the bonding company has a right of subrogation against the subcontractor. Because of our decision on the first question, the second is not reached.

Petitioner West Point Construction Company, a general contractor, subcontracted with third-party respondent Fast Electric, Inc. on a prison construction project after respondent bonding company, Fidelity & Deposit Company of Maryland, advised it upon inquiry that there would be no problem bonding the subcontractor should it be awarded the project. The contract, executed in September 1983, specified that the subcontractor would provide a "Performance Bond and a Labor and Material Payment Bond in a form satisfactory to the contractor . . . , if required by the contractor." Bonding was required, and the subcontractor contacted the bonding company about writing the bonds and notified the contractor that the bonds were forthcoming.

Although the bonds had not yet been secured, the subcontractor was instructed to begin the work. The bonding company delivered the requested bonds on standard forms to the subcontractor for execution and delivery. The subcontractor tendered the first premium and executed and delivered the bonds to the contractor, as obligee, for acceptance. The contractor, however, refused acceptance, requesting instead that the bonds be issued on its own forms.

The bonding company then wrote new bonds on the contractor's forms and mailed them to the subcontractor for execution and delivery. The subcontractor this time did not execute them, deciding at some point not to be bonded after all.

From November 1983 to May 1984, the contractor made repeated requests to the subcontractor for the bonds. In May the subcontractor notified the contractor that it would not be providing bonds, and sometime that Spring the subcontractor informed the bonding com-

pany of its decision and returned the bonds requesting a refund of the premium.

In August 1984 the contractor filed a petition for declaratory judgment to establish the obligation of the bonding company. By January 1985 the subcontractor abandoned the construction project, and the contractor demanded the subcontractor to return and complete its work; at the same time it demanded the bonding company to cure the default. Neither complied.

The bonding company thereafter interpleaded the subcontractor as third-party respondent. A hearing was held, evidence was taken, and briefs were submitted. Based thereon, the trial court entered its order on the declaratory judgment action, concluding that no surety relationship was ever created between the subcontractor as principal, the bonding company as surety, and the contractor as obligee. There was no valid suretyship contract; there was no acceptance of the offer, referring to the subcontractor's refusal to execute the second set of bonds; and there was no acceptance by the obligee of the first set of bonds. So in neither instance did the surety become bound by a contract. The court did not end the matter there, but held that the bonding company was nevertheless directly bound to the general contractor by its promise to bond and act as surety for the subcontractor. It also held that the bonding company had "no right of subrogation, indemnification, or exoneration" against the subcontractor "based upon rights of suretyship." The bonding company appeals from these latter two holdings.

1. OCGA § 13-3-44 (a), applied by the court as the basis for binding the bonding company, is a codification of the equitable principle of promissory estoppel. It basically substitutes action or forbearance, (i.e., reliance) by the promisee for the consideration which would otherwise be lacking: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise . . ." The doctrine was adopted judicially even before it was enacted by the legislature. *Insilco Corp. v. First Nat. Bank of Dalton*, 248 Ga. 322 (1) (283 SE2d 262) (1981); *Pepsi-Cola Bottling Co. v. First Nat. Bank*, 248 Ga. 114, 115 (2) (281 SE2d 579) (1981). "The principle of promissory estoppel merely provides that, in certain circumstances, the reliance by the promisee or third party upon the promise of another is sufficient consideration, in and of itself, to render the executory promise enforceable against the promisor." *Loy's Office Supplies v. Steelcase, Inc.*, 174 Ga. App. 701, 702 (331 SE2d 75) (1985).

In this case, the promise that the contractor purportedly relied upon was the bonding company's "promise" to provide bonding for

the subcontractor should it be awarded the contract. Even if the general contractor relied upon the assurance by the bonding company that the proposed subcontractor was bondable by it, the bonding company did not promise to be bound even if its customer, the contemplated principal, refused to execute the bond.[1] Such would obviously create a direct liability to a third party for the nonperformance of someone else over whom the promisor had no control, and in addition would create this liability without any benefit to the promisor. If the bond agreement was not consummated, the premium would not be earned.

Promissory estoppel cannot be applied unless the promisee reasonably relied on the promise. *Atkinson v. American Agency Life Ins. Co.*, 165 Ga. App. 102, 104-105 (2) (299 SE2d 600) (1983).

Even if such a promise had been made, and there was no evidence that it was, there could be no reasonable reliance on it because its enforceability is fraught with legal impediments. For one thing, no specific terms were even discussed, much less agreed upon. See *Loy's*, supra at 702. For another, but by no means the least, it defies logic to suggest that the intended obligee could reasonably rely on a promise to be bound without any compensation to the promisor. The general contractor, dealing with a proposed surety, was charged with knowing what the law required to bind a surety and that until these factors were present, it would not be bound. *Johnson v. Caldwell*, 148 Ga. App. 617, 619 (2) (251 SE2d 837) (1979). The principal would have to be bound, OCGA §§ 10-7-1; 10-7-2, and the general contractor knew it was not. Thus, even if the promise described above had been made, there could be no such reliance that equity would step in to enforce it. "The contract of suretyship is one of strict law; and the surety's liability will not be extended by implication or interpretation." OCGA § 10-7-3.

Turning to the assurance that *was* made, and assuming for the sake of argument that it was an enforceable "promise," the evidence and facts found show that it was kept. Not only did the bonding company provide the bonds, but when they were rejected by the contemplated obligee because they were on the bonding company forms, it provided the subcontractor with bonds on forms required by the obligee. It did what it said it would do, twice. The first time, the proposed obligee rejected the bonds, so the surety did not become obligated.

---

[1] The contractor asserts it relied upon the bonding company's responses to inquiries, never retracted or modified, that its records reflected a fully paid, valid and outstanding bond. The contractor contends that the bonding company, by these circumstances, promised to be bound even though the contemplated principal never executed the bond. We fail to see how these responses can be converted into a promise or that the bonding company was obligated to tell it the subcontractor was not bonded, something it already knew.

See *Mayo v. Renfroe*, 66 Ga. 408, 432 (2) (1881) and *Rust v. Producers Co-op &c.*, 81 Ga. App. 260, 263 (58 SE2d 435) (1950). See also 72 CJS, Principal & Surety, § 55 and 74 AmJur2d, Suretyship, § 17. The second time, the proposed principal declined to execute the bonds; again the surety did not become obligated because there was an incomplete contract. OCGA §§ 10-7-1; 10-7-2; 10-7-3. The point is, the surety's customer did not do what *it* said it would do (provide acceptable bonds), and the intended obligee knew that. Even if the bonding company could, it did not promise that its customer would execute the surety bonds, and the contemplated obligee does not even so contend.

Even if the bonding company had promised that the bonds would be executed by the subcontractor, a promise that can easily be seen to be burdened with many blocks to its enforceability, the contemplated obligee knew all along that this was not done and chose to allow the subcontractor to begin and to continue the work anyway. Therefore reliance on accomplishment was lacking. Reliance could not as a matter of law be reasonable because the contractor is obliged to know that it had no right to rely on an oral promise to create an obligation by surety, so, promissory estoppel is far afield. *Atkinson v. American Agency Life Ins. Co.*, supra. The surety's undertaking of the risk never occurred, and it was never shifted from the general contractor. See *Lesser v. William Holliday Cord Assoc.*, 349 F2d 490 (8th Cir. 1965).

2. The remaining issues are moot.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED MARCH 21, 1986 —
REHEARING DENIED APRIL 3, 1986 —

*George C. Reid, Laurie B. Gilbert*, for appellant.

*Edwin V. Gartin, J. Littleton Glover, Jr., W. Hensell Harris, Jr., Edward H. Wasson, Jr., Thomas L. McLain*, for appellees.