515 So.2d 1374 (1987)
WEST POINT CONSTRUCTION COMPANY, a Georgia Corporation, Appellant,
v.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Corporation, Appellee.
No. 87-1055.
District Court of Appeal of Florida, Third District.
December 8, 1987.
*1375 R. Stuart Huff, Coral Gables, for appellant.
Kimbrell & Hamann and Joseph T. Kissane, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and BASKIN, JJ.
BASKIN, Judge.
West Point Construction Company [West Point] appeals a final judgment in favor of Fidelity and Deposit Company [Fidelity] entered in an action predicated on breach of contract, specific performance, and fraud. We affirm.
In 1983, West Point, the general contractor for a Georgia prison construction project, entered into a subcontract under which Fast Electric [Fast] was to perform electrical, security, and communication work on the project. Fidelity had assured West Point that Fast could be bonded. The contract required Fast to provide a "Performance Bond and a Labor and Material Payment Bond in a form satisfactory to the contractor." Fast notified West Point that Fast had contracted Fidelity about issuing the bonds.
Fast began work on the prison project prior to the issuance of the bonds. Using its own forms, Fidelity delivered the bonds to Fast for execution and delivery to West Point. Fast paid the premium and delivered the executed bonds. West Point refused to accept the bonds, requesting that they be issued on its own forms. Fidelity complied with this request and again delivered bonds to Fast for execution and delivery; Fast, however, did not sign or deliver them.
Between November 1983 and May 1984, West Point repeatedly requested Fast to deliver the bonds. In May, Fast notified West Point that it would not be providing the bonds. In addition, Fast told Fidelity of this decision, returned the bonds, and requested a refund of the bond premium.
In August 1984, West Point filed a petition for declaratory relief in Superior Court of Troup County, Georgia, to establish Fidelity's bond obligations. West Point named Fidelity as respondent, and Fidelity interpleaded Fast as third-party respondent. When Fast discontinued work on the project, West Point demanded that Fast resume work and that Fidelity cover the default; however, neither Fast nor Fidelity complied with West Point's demands.
The matter proceeded to trial, and the trial court entered an order finding no surety relationship between the parties and no valid surety contract. The court also found that West Point rejected the first set of bonds and that Fast failed to execute the second set of bonds. The court ruled that West Point's reliance on Fidelity's promise to issue the bonds rendered the promise enforceable. Fidelity appealed.
In Fidelity & Deposit Co. v. West Point Constr. Co., 178 Ga. App. 578, 344 S.E.2d 268 (1986), the Georgia Court of Appeals reversed the trial court's ruling. The Supreme Court of Georgia denied West Point's petition for certiorari.
In 1986, West Point filed a complaint in Dade County Circuit Court against Fidelity, and others not involved in this appeal, *1376 claiming breach of contract, specific performance, and fraud. This complaint was based on the same transactions that formed the predicate for the litigation in Georgia. Fidelity answered and asserted the affirmative defenses of res judicata and collateral estoppel. Contending that the matters alleged in West Point's complaint had been litigated in the Georgia action, Fidelity moved for summary judgment. The trial court granted Fidelity's motion and entered Final Judgment in favor of Fidelity. West Point appeals.
The affirmative defense of collateral estoppel bars relitigation between the same parties of questions which have been conclusively determined in prior litigation. Seaboard Coast Line R.R. v. Industrial Contracting Co., 260 So.2d 860 (Fla. 4th DCA 1972). The elements of collateral estoppel are met if the parties and issues are identical and the matter has been fully litigated and conclusively determined in a court of competent jurisdiction. Trucking Employees of N. Jersey Welfare Fund, Inc. v. Romano, 450 So.2d 843 (Fla. 1984); Mobil Oil Corp. v. Shevin, 354 So.2d 372 (Fla. 1977); Husky Indus., Inc. v. Griffith, 422 So.2d 996 (Fla. 5th DCA 1982); Fuller v. General Motors Corp., 394 So.2d 491 (Fla. 3d DCA 1981).
In this case, the criteria are clearly satisfied. The parties and issues are identical to those in the Georgia proceedings. The matters alleged in West Point's complaint in the present action were conclusively determined in the Georgia action. In the complaint filed in Dade County Circuit Court, West Point alleges that: Fidelity executed and delivered bond contracts which incorporated Fast's subcontract and bound Fidelity to West Point; Fidelity breached that promise by denying coverage under the bonds; Fidelity is obligated to deliver bonds in a form acceptable to West Point; Fidelity prevented West Point from receiving coverage under the bonds; Fidelity failed to inform West Point of the status of the bonds; and Fidelity falsely assured West Point that the job was bonded.
In West Point Constr. Co., the Georgia court stated that "[a]t issue is whether defendant bonding company is obligated to the general contractor for the subcontractor's default on a project... ." West Point Constr. Co., 178 Ga. App. at 578, 344 S.E.2d at 268. In resolving this issue the court stated that West Point's assertion that:
it relied upon the bonding company's responses to inquiries, never retracted or modified, that its records reflected a fully paid, valid and outstanding bond. The contractor [West Point] contends that the bonding company, by these circumstances, promised to be bound even though the contemplated principal never executed the bond. We fail to see how these responses can be converted into a promise or that the bonding company was obligated to tell it the subcontractor was not bonded, something it already knew.
West Point Constr. Co., 178 Ga. App. at 580, 344 S.E.2d at 270 n. 1.
The court continued:
Turning to the assurance that was made, [Fidelity's "promise" that it would provide bonding if Fast was awarded the subcontract] and assuming for the sake of argument that it was an enforceable "promise," the evidence and facts found show it was kept. Not only did the bonding company provide the bonds, but when they were rejected by the contemplated obligee because they were on bonding company forms, it provided the subcontractor with bonds on forms required by the obligee. It did what it said it would do, twice. The first time, the proposed obligee rejected the bonds, so the surety did not become obligated. The second time, the proposed principal declined to execute the bonds; again the surety did not become obligated because there was an incomplete contract. The point is, the surety's customer did not do what it said it would do (provide acceptable bonds), and the intended obligee knew that.
Even if the bonding company had promised that the bonds would be executed *1377 by the subcontractor, ... the contemplated obligee knew all along that this was not done and chose to allow the subcontractor to begin and to continue the work anyway. Therefore reliance on accomplishment was lacking. Reliance could not as a matter of law be reasonable because the contractor is obliged to know that it had no right to rely on an oral promise to create an obligation by surety, so, promissory estoppel is far afield. The surety's undertaking of the risk never occurred, and it was never shifted from the general contractor.
West Point Constr. Co., 178 Ga. App. at 580-581, 344 S.E.2d at 271 (citations omitted).
After reviewing the decision of the Georgia court as well as the pleadings in the Florida action, we conclude that collateral estoppel precludes the instant action. Accordingly, we affirm the final judgment.
Affirmed.